# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**BRADLEY W. SMITH**                                   **CIVIL ACTION**

**VERSUS**                                             **NO. 15-357-JJB-RLB**

**SHELTER MUTUAL INSURANCE CO.**

## <u>ORDER</u>

Before the Court is Plaintiff's Reurged Motion to Compel Discovery and Sanctions (R. Doc. 54) filed on June 1, 2017.  The Motion is opposed. (R. Doc. 58).  Plaintiff has filed a Reply. (R. Doc. 61).

## I.      Factual and Procedural History

This is an insurance action arising out of an automobile-pedestrian accident on August 13, 2001 involving Bradley W. Smith ("Smith" or "Plaintiff") and Paul Babin ("Babin").  After the accident, Smith filed a state court lawsuit against Babin and his insurance company, Shelter Mutual Insurance Company ("Shelter" or "Defendant").  After conducting a bifurcated trial, the trial judge dismissed with prejudice Babin's cross-claims against Shelter for alleged bad faith in refusing to provide Babin with a legal defense, misrepresenting the coverage under the Shelter policy, and failure to indemnify Babin.  Thereafter, Babin sought review of the trial court's finding that Shelter did not have a duty to defend Babin.  The Louisiana First Circuit Court of Appeal affirmed.  Babin also sought review of the trial court's dismissal of his claims of misrepresentation and for failure to indemnify.  The Louisiana First Circuit held the issue was not properly before the court on appeal because Shelter had admitted coverage and paid its policy limits after the jury trial portion of the bifurcated trial.

On June 3, 2015, Smith filed the instant lawsuit, under an assignment of rights from Babin, seeking to collect from Shelter the excess amount of the state trial court judgment beyond the policy liability amount of $10,000 per person, and for bad faith damages pursuant to La. R.S. 22:1892 and La. R.S. 22:1973. (R. Doc. 1).

On June 24, 2016, Smith served his First Set of Interrogatories and requests for Production of Documents and Things on Shelter. (R. Doc. 54-3).

On July 1, 2016, Shelter filed a Motion for Summary Judgment, arguing that Smith's claims were barred by res judicata. (R. Doc. 20).

On August 19, 2016, the district judge granted in part and denied in part Shelter's Motion for Summary Judgment. (R. Doc. 27). In short, the district judge held that Smith's claims for bad faith damages were barred by res judicata, but allowed Smith to proceed on his excess judgment liability claims. Both parties appealed this ruling to the Fifth Circuit Court of Appeals. (R. Doc. 36; R. Doc. 39).

On August 25, 2016, Shelter filed a second Motion for Summary Judgment, arguing that Smith's excess judgment liability claims should also be dismissed. (R. Doc. 28). That same day, Shelter provided its responses to Smith's outstanding discovery requests. (R. Doc. 54-5).

On September 14, 2016, Smith opposed Shelter's Motion for Summary Judgment on the issue of excess judgment liability (R. Doc. 32) and also sought an order requiring discovery pursuant to Rule 56(d) of the Federal Rules of Civil Procedure (R. Doc. 33). The district judge granted the request for Rule 56(d) discovery, and dismissed Shelter's Motion for Summary Judgment on the issue of excess judgment liability (R. Doc. 32) without prejudice to refiling following the conclusion of discovery. (R. Doc. 37).

On September 21, 2016, defense counsel sent a letter to Plaintiff's counsel stating that they were requesting additional materials from their client and would provide the responses as soon as received, hopefully by September 30, 2016. (R. Doc. 42-6).

On October 7, 2016, Shelter filed his initial Motion to Compel Discovery and Sanctions. (R. Doc. 42). The undersigned denied that motion without prejudice to refile within 30 days after the issuance of a ruling by the Fifth Circuit on the pending appeals. (R. Doc. 49).

On May 2, 2017, the Fifth Circuit dismissed the parties' appeal for lack of jurisdiction. (R. Doc. 52). That same day, Shelter moved for partial reconsideration of the August 19, 2016 Ruling to the extent it did not dismiss Smith's claims for excess judgment liability. (R. Doc. 50).

On May 5, 2017, the parties held a conference regarding Smith's discovery requests and Defendant's responses. (R. Doc. 54-1 at 2).

On May 18, 2017, Shelter provided its "Updated Responses" to Smith's Interrogatories and Requests for Production. (R. Doc. 54-8).

On June 1, 2017, Smith filed the instant Reurged Motion to Compel Discovery and Sanctions. (R. Doc. 54). Smith seeks an order compelling supplemental responses to Interrogatory Nos. 1, 2, 3, 5, 7, 8, 11, 12, 13, and Request for Production Nos. 1, 5, 6, 7, 8, 9 and 10. (R. Doc. 54-2 at 4-12).

On June 8, 2017, the district judge denied Defendant's Motion for Partial Reconsideration of his August 19, 2016 Ruling. (R. Doc. 55). In so doing, the district judge upheld his dismissal of "Plaintiff's bad faith claims of failing to provide a legal defense to Paul Babin (failure to defend), misrepresenting coverage under the Shelter policy, and for failure to indemnify Babin arising under La. R.S. 22:1892 and La. R.S. 22:1973" on the basis of res

judicata, and clarified that Smith's "only remaining claim is one for excess judgment liability under La. R.S. 22:1973." (R. Doc. 55 at 5).

On June 29, 2017, the undersigned held a conference with the parties and set new deadlines in this action, including a new trial date. (R. Doc. 62).

## II.     Arguments of the Parties

In support of his motion, Smith argues that despite Shelter's objections, Interrogatory Nos. 1, 2, 3, 5, 7, 8, 11, 12, 13, and Request for Production Nos. 1, 5, 6, 7, 8, 9 and 10 seek relevant information within the scope of discovery in light of the remaining excess liability claim. (R. Doc. 54-2 at 4-12). Smith further argues that because Shelter has not provided a privilege log pursuant to Rule 26(b)(5)(A) of the Federal Rules of Civil Procedure, it has waived any objections to the discovery requests on the basis of attorney-client privilege and/or work product immunity. (R. Doc. 54-2 at 13-14). Smith further argues that Shelter's "refusal to participate in good faith" and its "evasive answers and inapplicable objections" to the foregoing discovery requests constitutes sanctionable conduct pursuant to Rule 37, meriting a finding that Shelter has waived attorney-client privilege and/or work product immunity where asserted, or, alternatively, an award of costs and attorney's fees. (R. Doc. 54-2 at 20). Finally, Smith asserts that Shelter has waived any objections not raised in its original responses in light of the requirements of Rule 26(g). (R. Doc. 54-2 at 20).

In opposition, Shelter asserts that it has properly asserted the attorney-client privilege and/or work product immunity where asserted, and that its "general objections" to the discovery requests on those bases constitutes a "privilege log" as required by Rule 26(b)(5)(A). (R. Doc. 58 at 1-5). Shelter further argues that discovery regarding the dismissed bad faith claims is irrelevant and that certain responses to the discovery requests are sufficient. (R. Doc. 58 at 6-7).

Finally, Shelter argues that sanctions are not merited given the importance of attorney-client privilege and work product immunity, and the procedural history of this action. (R. Doc. 58 at 8-9).

In reply, Smith raises additional arguments regarding the insufficiency of Shelter's objections based on attorney-client privilege and work product immunity, including the sufficiency of its "privilege log." (R. Doc. 61).

## III.    Law and Analysis

### A.    Legal Standards

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).  The court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i)

expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

Rules 33 and 34 provide a party with 30 days after service of the discovery to respond or object. *See* Fed. R. Civ. P. 33(b)(2) and 34(b)(2)(A). If a party fails to respond fully to discovery requests made pursuant as to Rules 33 and 34 in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel disclosure and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

**B.      Analysis**

### 1.      Attorney-Client Privilege and/or Work Product Immunity

Shelter raised the objection of attorney-client privilege to Interrogatory Nos. 7, 8, 11, 13, and Request for Production Nos. 1, 3, 5, 8. Shelter also raised the objection of work product immunity to Interrogatory No. 13.

In addition to the requirements set forth in Rule 26(b)(5)(A) and mentioned above, this Court's Local Rule 26(c) provides the following:  "A party withholding information claimed privileged or otherwise protected must submit a privilege log that contains at least the following information: name of the document, electronically stored information, or tangible things; description of the document, electronically stored information, or tangible thing, which description must include each requisite element of the privilege or protection asserted; date; author(s); recipient(s); and nature of the privilege." LR 26(c); *see also Cashman Equip. Corp. v. Rozel Operating Co.*, No. 08-363, 2009 WL 2487984, at *2 (M.D. La. Aug. 11, 2009) ("[A] privilege log . . . should not only identify the date, the author, and all recipients of each document listed therein, but should also describe the document's subject matter, the purpose for its production, and a specific explanation of why the document is privileged or immune from discovery.") (quoting *Peacock v. Merrill*, No. 08-01, 2008 WL 687195, at *3 (M.D. La. Mar. 10, 2008)).

Shelter's objections to Smith's discovery requests on the basis of attorney-client privilege and work product immunity are insufficient.  Shelter has not described the withheld information in a manner consistent with Rule 26(b)(5)(A) and Local Rule 26(c).[1]  Accordingly, the Court will determine whether Shelter has waived the attorney-client privilege and/or work product immunity where asserted in light of its failure to comply with Rule 26(b)(5)(A) and Local Rule 26(c).

---

[1] Shelter argues that "Rule 26(b)(5)(A) does not require[] separate itemization of every item over which privileged is claimed." (R. Doc. 58).  In support of this proposition, Shelter relies on *Muro v. Target Corp.*, 250 F.R.D. 350, 363 (N.D. Ill. 2007).  The relevant part of that decision, which is not binding on this Court, merely stands for the proposition that a privilege log is not necessarily "inadequate for failure to separately itemize each individual e-mail quoted in an e-mail string." *Id.*  Here, Shelter has not identified <u>any</u> documents withheld on the basis of attorney-client privilege at all.  Accordingly, the *Muro* decision is inapposite.

It is within the Court's discretion to find a waiver of an asserted privilege for failing to timely produce a privilege log. *Janko v. Fresh Mkt., Inc.*, No. 13-648, 2015 WL 4656694, at *3 (M.D. La. Aug. 5, 2015) (citing *Blackard v. Hercules, Inc.,* No. 12-175, 2014 WL 2515197, at *4 (S.D. Miss. June 4, 2014)). Failure to produce a privilege log pursuant to Rule 26 "is, on its own, sufficient to warrant a finding that any privilege, even if it had been established . . ., has been waived." *Janko*, 2015 WL 4656694, at *3 (citing *Agee v. Wayne Farms, L.L.C.,* No. 06-268, 2007 WL 2903208, at *3 (S.D. Miss. Oct. 1, 2007); *see also Onebeacon Ins. Co. v. Forman Int'l Ltd.,* No. 04-2271, 2006 WL 3771010, at *7 (S.D.N.Y. Dec. 15, 2006) ("The unjustified failure to list privileged documents on the required log of withheld documents in a timely and proper manner operates as a waiver of any applicable privilege.").

Considering the arguments of the parties, the importance of the attorney-client privilege and work product immunity, and the record as a whole, the Court concludes that Shelter has not waived the attorney-client privilege and work product immunity. Foremost, for each of the written discovery requests to which Shelter raised an objection based on attorney-client privilege or work product immunity, it also raised an objection as to relevance. Considering the procedural history of this action, the Court will not penalize Shelter for not fully explaining the basis of its privilege objections (through a privilege log or otherwise) until the Court issued a finding that the information sought is relevant.

Furthermore, Smith has not indicated that the parties held a Rule 37 conference that specifically discussed Shelter's lack of compliance with Rule 26(b)(5)(A) and Local Rule 26(c). (*See* R. Doc. 54-1). Under these circumstances, the Court concludes that Shelter should be provided an opportunity to correct its deficiencies with regard to Rule 26(b)(5)(A) and Local Rule 26(c) rather than find a blanket waiver of privilege. *See U.S. Sec. & Exch. Comm'n v.*

*Commonwealth Advisors, Inc.*, No. 12-700, 2015 WL 10990241, at *2 (M.D. La. Dec. 16, 2015) (noting that district judge found "across-the-board waiver" of the attorney-client privilege by the magistrate judge without providing the defendants "an opportunity to correct the deficiencies" to be "unduly harsh"); *see also Cashman Equip. Corp.*, 2009 WL 2487984, at *2 n.4 ("Waiver of privilege objections is not required as a result of the production of a deficient privilege log.") (citing cases).

Accordingly, the Court will require Shelter to produce explanations of its assertions of attorney-client privilege and work product immunity in accordance with Rule 26(b)(5)(A) and Local Rule 26(c) **on or before July 24, 2017**. Shelter shall produce a privilege log and shall identify documents required to be produced consistent with this Order, but withheld pursuant to the attorney-client privilege and/or the work product doctrine. If Shelter fails to identify on its privilege log documents and/or communications otherwise found to be within the scope of discovery as detailed in this Order, it will be subject to sanctions, including, but not limited to, a finding that it has waived the attorney-client privilege and/or work product doctrine with regard to the documents and/or communications not identified on the privilege log.

### 2. Shelter's "Full Faith and Credit" Objection

Shelter raised the following objection to Interrogatory Nos. 3, 5, 7, 8, 11, 12, 13, and Request for Production Nos. 1, 5, 6, 7, 8, 9, 10:

> Objection. The requested information will is (sic) not relevant to the case at hand and is not important to the discovery in resolving the issues pursuant to Federal Rule of Civil Procedure 26(b)(l). The federal courts are bound to give to the judgments of the state courts the same faith and credit that the courts of one State are bound to give to the judgments of the courts of her sister States. Kremer v. Chem. Const. Corp., 456 U.S. 461, 481, 102 S.Ct. 1883, 1898, 72 L.Ed.2d 262 (1982). There has been a state court judicial determination that Shelter "was not arbitrary, capricious, or in any way in bad faith making its decision that it did not have coverage, nor did it have a duty to defend." Any investigation into the requested material is implicitly and impermissibly seeking ruling in the federal

court otherwise, which is impermissible under Full Faith and Credit. 28 U.S.C.A. § 1738.

It appears that the foregoing "full faith and credit" objection is premised on the argument that the dismissal of Smith's bad faith claims on the basis of res judicata forecloses discovery on the remaining excess liability claim.

Shelter dedicates just over a page of its Opposition to discuss the scope of discovery in general and its relevance argument in particular. (R. Doc. 58 at 5-6). Shelter does not address its "full faith and credit" objection at all. Shelter's "full faith and credit" objection appears to be premised on the Louisiana First Circuit Court of Appeal's ruling on whether Shelter acted in bad faith.

The district judge has upheld his dismissal of "Plaintiff's bad faith claims of failing to provide a legal defense to Paul Babin (failure to defend), misrepresenting coverage under the Shelter policy, and for failure to indemnify Babin arising under La. R.S. 22:1892 and La. R.S. 22:1973" on the basis of res judicata, and clarified that Smith's "only remaining claim is one for excess judgment liability under La. R.S. 22:1973." (R. Doc. 55 at 5). Accordingly, to the extent Smith's discovery requests are relevant to his remaining claim for "for excess judgment liability under La. R.S. 22:1973," and are otherwise proportional to the needs of the case, then the information sought falls within the scope of discovery as defined by Rule 26(b)(1).

### 3.     Relevance and Proportionality

While it is not completely clear, it appears that Shelter also objects to Interrogatory Nos. 3, 5, 7, 8, 11, 12, 13, and Request for Production Nos. 1, 5, 6, 7, 8, 9, 10 on the basis of irrelevance and disproportionality outside of the "full faith and credit" objection described above. In addition, Smith has challenged the sufficiency of Shelter's responses despite its objections.

As stated above, Shelter has chosen not to address the issue of relevancy in much detail in its Opposition. At most, Shelter briefly states, in conclusory fashion, that Interrogatory No. 7 and Request for Production Nos. 9 and 10 seek information that is "presently irrelevant." (R. Doc. 58 at 6). Shelter does not specifically argue anywhere in its Opposition why and to what extent the information sought in Interrogatory Nos. 3, 5, 7, 8, 11, 12, 13, and Request for Production Nos. 1, 5, 6, 7, 8, 9, 10 is irrelevant to Smith's claim for excess judgment liability under La. R.S. 22:1973 and/or Shelter's defenses to that claim.

Smith, on the other hand, argues in extensive detail that the information sought pursuant to these discovery requests is relevant in light of the Louisiana Supreme Court decision *Smith v. Audubon Ins. Co.*, 679 So.2d 372 (La. 1996). (R. Doc. 54-2 at 3-13). The *Smith* decision pronounced various factors in determining whether an insurer fails to settle a claim in bad faith, subjecting it to excess judgment liability:

> [T]he determination of whether the insurer acted in bad faith turns on the facts and circumstances of each case. Of course, an insurer is not obliged to compromise litigation just because the claimant offers to settle a claim for serious injuries within the policy limits, and its failure to do so is not by itself proof of bad faith. The determination of good or bad faith in an insurer's deciding to proceed to trial involves the weighing of such factors, among others, as the probability of the insured's liability, the extent of the damages incurred by the claimant, the amount of the policy limits, the adequacy of the insurer's investigation, and the openness of communications between the insurer and the insured. Nevertheless, when an insurer has made a thorough investigation and the evidence developed in the investigation is such that reasonable minds could differ over the liability of the insured, the insurer has the right to choose to litigate the claim, unless other factors, such as a vast difference between the policy limits and the insured's total exposure, dictate a decision to settle the claim.

*Smith*, 679 So. 2d at 377; *see also Kelly v. State Farm Fire & Cas. Co.*, 169 So. 3d 328, 340 (La. 2015) ("*Smith* does not stand for the proposition that a 'firm settlement offer' is required as a condition for an insured's bad-faith failure-to-settle claim against an insurer"). In seeking discovery pursuant to Rule 56(d) to respond to Shelter's motion for summary judgment on the

issue of excess liability, Smith relied on the same factors to argue that the discovery requests seek relevant information. As stated above, the district judge granted that motion and dismissed Shelter's motion for summary judgment on the issue of excess liability with leave to refile after the conclusion of discovery. (R. Doc. 37).

Having reviewed Smith's arguments and the district judge's rulings, as well as considering Shelter's lack of any argument in support of a finding that the discovery requests at issue seek information irrelevant to Smith's claim for excess judgment liability under La. R.S. 22:1973 and/or Shelter's defenses to that claim, the Court will overrule Shelter's "relevancy" objection in full.

Shelter also asserts that the foregoing discovery requests are "not important to the discovery in resolving the issues" remaining in this action. This objection appears to assert that even if the discovery sought is relevant to the excess liability claims, it is disproportional to the needs of the case because the discovery sought is not important for resolving the excess liability claims. Shelter does not elaborate on this objection in its Opposition.

The Court will overrule Shelter's proportionality objection. Smith is seeking to recover over $1,215,485.54 plus legal interest and costs. The information sought is in Shelter's possession. Smith is an individual plaintiff; Shelter is an insurance company. The district judge has ruled that the discovery is important for addressing Shelter's motion for summary judgment on the issue of excess liability. Shelter has provided no argument regarding the burden or expenses involved in responding to the discovery requests. Accordingly, the Court concludes that the discovery is proportional to the needs of the case.

### 4.     The Individual Discovery Requests

Having globally addressed Shelter's objections to certain discovery requests, the Court will briefly address the individual discovery requests at issue.

### i.     Interrogatory No. 1

Interrogatory No. 1 requests Shelter to identify individuals who provided information or assisted in answer the interrogatories by providing their full name, address, telephone number, and occupation. (R. Doc. 54-3 at 4). Shelter's updated response provides the contact information for Plaintiff's counsel and identifies an individual named Vickie Davis as an in-house attorney for Shelter, but does not provide an address or telephone number or otherwise object to the interrogatory. (R. Doc. 54-8 at 1-2).

The interrogatory seeks information within the scope of discovery. In its Opposition, Shelter identifies its corporate address as "1817 W. Broadway, Columbia, MO 65218." (R. Doc. 58 at 7). Shelter also mentions the names of two other individuals not identified in its updated response—Jacquie Spry and Rhonda Landy. (R. Doc. 58 at 7). It is unclear to the Court whether these individuals are being identified as "persons who provided any information or otherwise assisted in providing information or whom answered or assisted in the preparation of the responses" to Smith's interrogatories.

Based on the foregoing, **IT IS ORDERED** that Shelter must provide a supplemental response to Interrogatory No. 1 **on or before July 24, 2017**. The supplemental response shall identify **<u>all</u>** individuals involved in the preparation of responses to Smith's interrogatories, including each individual's "full name, current address, current telephone number, and current occupation." The response may provide a current business address and telephone number where the individual can be reached.

### ii.     Interrogatory No. 2

Interrogatory No. 2 requests Shelter to provide the names and contact information of potential witnesses, including identifying which witnesses will be called to testify as experts. (R. Doc. 54-3 at 4).  Shelter's response identified certain individuals and provided a catch-all to include any other witnesses listed by any other party to the litigation or identified in discovery. (R. Doc. 54-8 at 2).

The Court's deadlines control when witnesses must be disclosed.  Shelter's deadline to identify expert witnesses expired on October 28, 2016. (R. Doc. 19).  The deadline to disclose all witnesses is set by the district judge through the filing of the Pre-Trial Order.  The Court will not compel a discovery response that conflicts with its current deadlines.

Based on the foregoing, **IT IS ORDERED** that Smith's Motion is **DENIED** with regard to Interrogatory No. 2.

### iii.     Interrogatory No. 3

Interrogatory No. 3 requests Shelter to identify the date, recipient, and author of any written correspondence to Babin or his agents issued by Shelter, or to produce the underlying documents. (R. Doc. 54-3 at 5).  Shelter responded by stating that it wrote to Babin to inform him of the intentional act exclusion in his liability policy, and attached a letter dated June 30, 2005 "where Shelter informed Mr. Babin that it was not obligated to provide coverage for the incident nor a defense." (R. Doc. 54-8 at 2-3).

This interrogatory seeks information within the scope of discovery.  It is unclear whether Shelter has failed to identify any documents in its possession, custody, or control responsive to the interrogatory.

Based on the foregoing, **IT IS ORDERED** that Shelter must provide a supplemental response to Interrogatory No. 3 **on or before July 24, 2017**. The supplemental response shall respond in full to Interrogatory No. 3, either through identification or production of the information sought to be identified. If Shelter has no additional information to produce, it must state so in its supplemental response.

### iv.     Interrogatory No. 5

Interrogatory No. 5 requests Shelter to identify any written or recorded statements taken or caused to be taken by Shelter prior to or during the underlying state court litigation, including identification of the person from whom the statement was taken, the date of the statement, the method of recording, and other information. (R. Doc. 54-3 at 5-6). In its updated response, Shelter stated that it does not have any written or recorded statement of any witness other than those taken via deposition. (R. Doc. 54-8 at 4).

Smith argues that the response is insufficient in that the interrogatory requests Shelter "to identify any written or recorded statements obtained in connection with plaintiff's claims." (R. Doc. 54-2 at 5-6). Smith then goes further and represents to the Court that the "interrogatory asked whether any written or recorded statements were <u>obtained</u>." (R. Doc. 54-2 at 6) (emphasis in original).[2]

The word "obtained" does not appear anywhere in Interrogatory No. 5. In fact, the Interrogatory specifically asks whether Shelter did "take or cause to be taken any written or recorded statements." (R. Doc. 54-8 at 4). Whether Shelter "obtained" any such statements from any third party is broader than the scope of the Interrogatory. While there may in fact be

---

[2] Smith continues with this same argument – "As noted, the interrogatory inquired into whether a recording or statements was obtained not whether Shelter had possession of the recording or statement." (R. Doc. 54-2 at 6).

responsive material that was not identified in Shelter's response, that does not justify an attempt to rewrite the Interrogatory in the context of a Motion to Compel or to mispresent such to the Court. Counsel is advised that this will not be tolerated in the future.

Based on the Court's review, Shelter's updated response does not expressly indicate that it does not have any responsive documents in its possession, custody, or control to identify in response to this interrogatory. For clarification, the Court will require Shelter to supplement its response.

Based on the foregoing, **IT IS ORDERED** that Shelter must provide a supplemental response to Interrogatory No. 5 **on or before July 24, 2017**. The supplemental response shall respond in full to Interrogatory No. 5, either through identification or production of the information sought to be identified. If Shelter has no additional information to produce, it must state so in its supplemental response.

### v.      Interrogatory No. 7

Interrogatory No. 7 requests Shelter to identify whether it knew, at any time during the underlying state court litigation, that the exclusionary language in the policy at issue "relied upon for a denial of coverage required a showing that the injuries caused must have been expected or intended from the standpoint of the insured" and, if so, to state when Shelter first became "aware of this fact." (R. Doc. 54-3 at 6).

In its updated response, Shelter asserts that the interrogatory "seeks a legal conclusion from the attorneys representing Shelter and as such is protected by attorney-client privilege." (R. Doc. 54-8 at 6). Shelter does not identify any communications between it and its counsel that would constitute a privileged communication. In the Memorandum in Support, Smith specifically states that he is not seeking any conclusion from counsel for Shelter, rather the

knowledge of Shelter as to how their policy language is interpreted by the courts. (R. Doc. 54-2 at 7). This could simply be an awareness of court decisions and results of litigation. Even if known by an attorney, Shelter has not made a showing as to how awareness of the fact that a court has ruled a particularly way would fall within the privilege. While a legal conclusion from counsel could be an example of a responsive answer covered by privilege, that does not necessarily mean that this would be the only such response.

Accordingly, Shelter must provide a supplemental response to Interrogatory No. 7. To the extent Shelter maintains that privileged advice of counsel is the only source of any responsive information, it must provide a supplemental response (without identifying the substance of the communication) describing the nature of the communications being withheld as privileged as required by Rule 26(b)(5)(A).

Based on the foregoing, **IT IS ORDERED** that Shelter must provide a supplemental response to Interrogatory No. 7 **on or before July 24, 2017** as detailed above.

### vi.    Interrogatory No. 8

Interrogatory No. 8 requests Shelter to "identify by name, current address, current telephone number and current employer each and every adjuster, team member, employee, agent, independent contract[or] or other person who was assigned to, assisted with, or otherwise substantively handled the adjustment or valuation of the claim and/or claims file" for the underlying litigation in state court. (R. Doc. 54-3 at 6-7). In its updated response, Shelter states that Babin first reported the claim to Rhonda Landry and that Jacquie A. Spry and Vickie Davis were involved in the claims handling process. (R. Doc. 54-8 at 6-7).

This interrogatory seeks information within the scope of discovery. Accordingly, the Court will require Shelter to provide a supplemental response identifying the employees and

independent contractors as requested. The supplemental response shall identify **all** individuals, whether an employee of Shelter or an independent contractor, who "was assigned to, assisted with, or otherwise substantively handled the adjustment or valuation of the claim and/or claims file" for the underlying state court litigation. The supplemental response shall provide each individual's full name, current address, current telephone number, and current occupation. The response may provide a current business address and telephone number where the individual can be reached.

In its updated response, Shelter also states that any correspondence between Shelter and Vickie Davis and/or Shelter's counsel is protected by the attorney-client privilege. (R. Doc. 54-8 at 7). The interrogatory does not require production of any correspondence. It merely requires the identification of individuals involved in the claims handling and adjustment process. Accordingly, it is unclear why Shelter makes an assertion of privilege in response to this interrogatory. To the extent Shelter is withholding information responsive information pursuant to this objection, it must provide a supplemental response describing the nature of the communications withheld pursuant to the attorney-client privilege pursuant to Rule 26(b)(5)(A).

Based on the foregoing, **IT IS ORDERED** that Shelter must provide a supplemental response to Interrogatory No. 8 **on or before July 24, 2017** as detailed above.

### vii.     Interrogatory No. 11

Interrogatory No. 11 requests Shelter to identify its "efforts" to investigate Smith's claim, and for Shelter to identify the individuals and dates involved with regard to these efforts and investigation. (R. Doc. 54-3 at 8). In its updated response, Shelter states that Babin first reported the claim to Rhonda Landry and that Jacquie A. Spry and Vickie Davis were involved in the claims handling process. (R. Doc. 54-8 at 9).

This interrogatory seeks information within the scope of discovery. That said, the Court finds the interrogatory to be so vague and overly broad that the Court will limit Shelter's required response despite the lack of an objection on that basis. The Court will limit the interrogatory to identification of any written records of Shelter's investigations by author, recipient, date, and identification of the individual or entity who has custody and/or control of the identified records. To the extent such records themselves have been provided in response to other discovery requests, Shelter may indicate such in its supplemental response.

Shelter also states that any correspondence between Shelter and Vickie Davis and/or Shelter's counsel is protected by the attorney-client privilege. (R. Doc. 54-8 at 9). The interrogatory does not require production of any correspondence. It merely requires the identification of individuals involved in the claims handling and adjustment process. Accordingly, it is unclear why Shelter makes an assertion of privilege in response to this interrogatory. To the extent Shelter maintains this objection on the basis that it is refusing to identify a particular responsive written record on the basis of privilege, it must provide a supplemental response describing the nature of the communications withheld pursuant to the attorney-client privilege pursuant to Rule 26(b)(5)(A).

Based on the foregoing, **IT IS ORDERED** that Shelter must provide a supplemental response to Interrogatory No. 11 **on or before July 24, 2017** as detailed above.

### viii. Interrogatory No. 12

Interrogatory No. 12 requests Shelter "to identify each and every policy, procedure, manual, guideline, document, industry standard or other method by which Shelter Mutual Insurance Company determines the potential value of a claim asserted against one of its insureds" and, for each identified policy or procedure, to state whether Shelter complied with the

policy or procedure in valuing the claims in the underlying state court litigation. (R. Doc. 54-3 at 8). In its updated response, Shelter states that it is searching for the requested materials and will supplement the discovery response. (R. Doc. 54-8 at 10).

This interrogatory seeks information within the scope of discovery. Shelter has agreed to identify responsive documents, and otherwise does not object to stating whether it followed the guidelines in those documents in this particular instance.

Based on the foregoing, **IT IS ORDERED** that Shelter must provide a supplemental response to Interrogatory No. 12 **on or before July 24, 2017** as detailed above.

### ix.    Interrogatory No. 13

Interrogatory No. 13 requests Shelter to identify all documents by date and custodian information that bears or makes reference to claim number 17-1-4373679-2-ZD in the possession of Shelter or on its behalf by an agent. (R. Doc. 54-3 at 8-9). In its updated response, Shelter provides that Vickie Davis has in her possession certain claim notes and excerpts from correspondence and conversations with Shelter's attorneys, but that this litigation file is privileged. (R. Doc. 54-8 at 11).

Shelter's updated response only references documents in Vickie Davis's possession that constitute her litigation file. The information sought by this interrogatory is not limited to documents in Vickie Davis's possession. Shelter must identify any additional responsive information in a supplemental response.

Again, the interrogatory does not request for the production of any correspondence or documents. It merely requires the identification of written records. Accordingly, it is unclear why Shelter makes an assertion of privilege in response to this interrogatory. To the extent Shelter maintains this objection, it must provide a supplemental response describing the nature of

the communications withheld pursuant to the attorney-client privilege pursuant to Rule 26(b)(5)(A).

Based on the foregoing, **IT IS ORDERED** that Shelter must provide a supplemental response to Interrogatory No. 13 **on or before July 24, 2017** as detailed above.

### x.     Request for Production No. 1

Request for Production No. 1 seeks the entire claims file for claim number 17-1-4373679-2-ZD. (R. Doc. 54-3 at 12).   In its updated response, Shelter asserts that any correspondence between Shelter and Vickie Davis or Shelter's counsel is protected by the attorney-client privilege. (R. Doc. 54-2 at 9-10).

This request seeks information within the scope of discovery. To the extent Shelter is claiming that any documents within the claims file is protected pursuant to the attorney-client privilege, it must produce an appropriate privilege log as discussed above.

Based on the foregoing, **IT IS ORDERED** that Shelter must provide a supplemental response to Request for Production No. 1 **on or before July 24, 2017** as detailed above.

### xi.     Request for Production No. 5

Request for Production No. 5 seeks production of any claims adjusting data used in the valuation of the underlying claims. (R. Doc. 54-3 at 12-13).   Shelter responded that any and all evaluations on Smith's damages in the underlying litigation "came from defense counsel" and that "those communications are protected by attorney-client privilege." (R. Doc. 54-8 at 13-14).

This request seeks information within the scope of discovery.  It is unclear whether Shelter's reference to "defense counsel" in support of its attorney-client defense refers solely to Shelter's outside counsel.  Regardless, to the extent Shelter is withholding any documents

containing privileged communications, Shelter must produce an appropriate privilege log as discussed above.

Based on the foregoing, **IT IS ORDERED** that Shelter must provide a supplemental response to Request for Production No. 5 **on or before July 24, 2017** as detailed above.

### xii. Request for Production No. 6

Request for Production No. 6 seeks production of written correspondence made at the direction of Shelter or its agents advising Babin of his potential exposure to a money judgment in excess of his liability insurance limits. (R. Doc. 54-3 at 13). Shelter responded by stating that it wrote to Babin to inform him of the intentional act exclusion in his liability policy, and attached a letter dated June 30, 2005. (R. Doc. 54-8 at 18).

This request seeks information within the scope of discovery. It is unclear whether Shelter has produced all responsive documents in its possession, custody, or control.

Based on the foregoing, **IT IS ORDERED** that Shelter must provide a supplemental response to Request for Production No. 6 **on or before July 24, 2017** as detailed above. To the extent Shelter has no additional responsive documents to produce, it must state so in its supplemental response.

### xiii. Request for Production No. 7

Request for Production No. 7 seeks production of any investigative reports, recordings, photographs, or other materials produced by Shelter or at its direction regarding the underlying incident. (R. Doc. 54-3 at 13). In its updated response, Shelter asserts that any correspondence between Shelter and Vickie Davis or Shelter's counsel is protected by the attorney-client privilege. (R. Doc. 54-8 at 19-20).

This request seeks information within the scope of discovery. To the extent Shelter is claiming that any responsive investigative reports, recordings, photographs, or other materials are protected pursuant to the attorney-client privilege, it must produce an appropriate privilege log as discussed above.

Based on the foregoing, **IT IS ORDERED** that Shelter must provide a supplemental response to Request for Production No. 7 **on or before July 24, 2017** as detailed above.

### xiv.    Request for Production No. 8

Request for Production No. 8 seeks production of any investigative reports, recordings, photographs, or other materials produced by Shelter or at its direction regarding the underlying claims asserted by Smith in the state court litigation. (R. Doc. 54-3 at 13-14).   In its updated response, Shelter asserts that any correspondence between Shelter and Vickie Davis or Shelter's counsel is protected by the attorney-client privilege.  (R. Doc. 54-8 at 20-21).

This request seeks information within the scope of discovery. To the extent Shelter is claiming that any responsive investigative reports, recordings, photographs, or other materials are protected pursuant to the attorney-client privilege, it must produce an appropriate privilege log as discussed above.

Based on the foregoing, **IT IS ORDERED** that Shelter must provide a supplemental response to Request for Production No. 8 **on or before July 24, 2017** as detailed above.

### xv.    Request for Production No. 9

Request for Production No. 9 seeks production of insurance policy form A-256-A,  any previous or subsequent version of the form, and any revised or replacement versions of the form if it is no longer in use. (R. Doc. 54-3 at 14).  In its updated response, Shelter argues that the

actual policy issued "is the best evidence of the insurance coverage provided by Shelter to Paul Babin at the time of the collision." (R. Doc. 54-8 at 21-22).

Smith argues that this information is relevant to determining Shelter's understanding of the current policy language and to access how Shelter conducted an investigation on their Babin's potential exposure to excess judgment. (R. Doc. 54-2 at 12). Shelter has provided no argument in support of a finding that the information sought is irrelevant to the remaining claims and defenses in this litigation. At most, Shelter reasserts its objection of irrelevance in its opposition in a conclusory fashion. (R. Doc. 58 at 6). In the absence of any argument to the contrary, the Court agrees the information sought is relevant for the reasons provided by Smith.

Based on the foregoing, **IT IS ORDERED** that Shelter must provide a supplemental response to Request for Production No. 9 **on or before July 24, 2017** as detailed above.

### xvi.    Request for Production No. 10

Request for Production No. 10 seeks production of "any and all written or electronically stored memoranda, internal correspondence, or other documentation regarding any and all changes, amendments, revisions or supplementations made to policy of insurance form A-256-A." (R. Doc. 54-3 at 14). In its updated response, Shelter produced a copy of the certified policy issued to Babin and stated that "any previous, and subsequent, amended, revised or replacement versions of said policy are irrelevant." (R. Doc. 54-8 at 22-23).

Smith argues that this information is relevant to determining Shelter's understanding of the current policy language and to access how Shelter conducted an investigation on Babin's potential exposure to excess judgment. (R. Doc. 54-2 at 12). Shelter has provided no argument in support of a finding that the information sought is irrelevant to the remaining claims and defenses in this litigation. At most, Shelter reasserts its objection of irrelevance in its opposition

in a conclusory fashion. (R. Doc. 58 at 6).  In the absence of any argument to the contrary, the Court agrees the information sought is relevant for the reasons provided by Smith.

Based on the foregoing, **IT IS ORDERED** that Shelter must provide a supplemental response to Request for Production No. 10 **on or before July 24, 2017** as detailed above.

### 5.    Sanctions and Awardable Expenses

Smith moves for an award of sanctions, including an award of attorney's fees and costs, pursuant to Rule 26(g) and Rule 37 of the Federal Rules of Civil Procedure.

Rule 26(g) provides that parties who do not make a reasonable inquiry before conducting or opposing discovery in federal court are subject to sanctions. Fed. R. Civ. P. 26(g)(3) ("If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.").

Rule 37 provides that sanctions are available where a party fails to comply with a court order, fails to provide information required by Rules 26(a) or (e), or fails to serve answers to interrogatories or responses to requests for inspection. Fed. R. Civ. P. 37(b), (c), and (d).  It appears that Smith is seeking sanctions pursuant to Rule 37(d)(1)(ii) on the basis that Shelter failed "to serve its answers, objections, or written response" to the Interrogatories and Requests for Production at issue. (R. Doc. 54-2 at 18-20).

For the reasons provided in the body of this Order, the Court concludes that Shelter's opposition to Smith's discovery on the basis of relevance and protections governed by the attorney-client privilege and/or work product doctrine was substantially justified.  Furthermore, given the record, the Court concludes that Shelter provided timely updated responses to the

discovery requests at issue. Accordingly, the Court finds no basis for issuing sanctions pursuant to Rule 26(g) or Rule 37.

Smith also asks the Court to find that Shelter has "waived" objections not raised in its responses with any particularity. As discussed above, the Court will not conclude that Shelter has waived its objections on the basis of attorney-client privilege and/or work product immunity. With the exception of any applicable privileges and/or immunities, however, any objections that were not raised in Shelter's responses have been waived. *See In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989) ("[A]s a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived."); *B&S Equip. Co. v. Truckla Servs., Inc.*, No. 09-3862, 2011 WL 2637289, at *6 (E.D. La. July 6, 2011) (finding waiver of all objections to "discovery requests based on relevance, unduly burdensome, over broad, or any other objection not grounded on the attorney client or the work product privilege.").

Finally, the Court considers whether the payment of expenses is merited pursuant to Rule 37(a)(5). As the Court will grant Smith's motion to compel in part and deny the motion to compel in part, it "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion. Fed. R. Civ. P. 37(a)(5)(C). Having considered the record as a whole, and the relief provided by the instant Order, the Court concludes that the parties must bear their own costs related to the instant motion.

IV.     **Conclusion**

**IT IS ORDERED** that Plaintiff's Reurged Motion to Compel Discovery and Sanctions (R. Doc. 54) is **GRANTED IN PART and DENIED IN PART** as provided in the body of this Order.

**IT IS FURTHER ORDERED** that Shelter must provide supplemental responses to Interrogatory Nos. 1, 3, 5, 7, 8, 11, 12, 13, and Request for Production Nos. 1, 5, 6, 7, 8, 9 and 10, including any privilege log consistent with Rule 26(b)(5)(A) and Local Rule 26(c), **on or before July 24, 2017**.

**IT IS FURTHER ORDERED** that parties shall bear their own costs.

Signed in Baton Rouge, Louisiana, on July 13, 2017.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**