UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BRADLEY W. SMITH                                          CIVIL ACTION

VERSUS                                                           NO. 15-357-SDD-RLB

SHELTER MUTUAL INSURANCE CO.

**ORDER**

Before the Court is Plaintiff's Motion for *In Camera* Review of Documents with Request for Expedited Consideration (R. Doc. 79) filed on November 29, 2017. The Motion is opposed. (R. Doc. 83). Plaintiff has filed a Reply. (R. Doc. 88).

**I.  Factual and Procedural History**

This is an insurance action arising out of an automobile-pedestrian accident on August 13, 2001 involving Bradley W. Smith ("Smith" or "Plaintiff") and Paul Babin ("Babin"). After the accident, Smith filed a state court lawsuit against Babin and his insurance company, Shelter Mutual Insurance Company ("Shelter" or "Defendant"). After conducting a bifurcated trial, the trial judge dismissed with prejudice Babin's cross-claims against Shelter for alleged bad faith in refusing to provide Babin with a legal defense, misrepresenting the coverage under the Shelter policy, and failure to indemnify Babin. Thereafter, Babin sought review of the trial court's finding that Shelter did not have a duty to defend Babin. The Louisiana First Circuit Court of Appeal affirmed. Babin also sought review of the trial court's dismissal of his claims of misrepresentation and for failure to indemnify. The Louisiana First Circuit held the issue was not properly before the court on appeal because Shelter had admitted coverage and paid its policy limits after the jury trial portion of the bifurcated trial.

On June 3, 2015, Smith filed the instant lawsuit, under an assignment of rights from Babin, seeking to collect from Shelter the excess amount of the state trial court judgment beyond the policy liability amount of $10,000 per person, and for bad faith damages pursuant to La. R.S. 22:1892 and La. R.S. 22:1973. (R. Doc. 1). The district judge dismissed Smith's claims for bad faith damages as barred by res judicata, but allowed Smith to proceed on his excess judgment liability claim under La. R.S. 22:1973. (R. Doc. 27; R. Doc. 55). The district judge has also allowed Smith to seek discovery on this excess judgment liability claim pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. (R. Doc. 37). These rulings by the district judge necessarily define the scope of discovery in this matter.

On June 24, 2016, Smith served his First Set of Interrogatories and Requests for Production of Documents and Things on Shelter. (R. Doc. 54-3). These discovery requests have been subject to various discovery motions. In relevant part, Smith filed a motion on June 1, 2017 seeking an order compelling supplemental responses. (R. Doc. 54). The Court granted the foregoing motion in part, ordering Shelter to provide supplemental responses to certain discovery requests, including any privilege log consistent with Rule 26(b)(5)(A) and Local Rule 26(c). (R. Doc. 63).

On July 24, 2017, Shelter provided its second supplemental responses, including a privilege log withholding various documents on the basis of attorney-client privilege and the work product doctrine. (R. Doc. 79-4).

Smith then filed another motion seeking an order compelling, among other things, an additional supplemental response to Interrogatory No. 7, which sought information regarding Shelter's knowledge surrounding the policy's exclusionary language and when such knowledge was obtained. (R. Doc. 64).

On September 7, 2017, the Court denied the foregoing motion with regard to Interrogatory No. 7, concluding that Shelter's second supplemental response was sufficient. (R. Doc. 69 at 3-4). In so holding, the Court noted that Shelter "abandoned its objection based on the attorney-client privilege," as no such objection was raised in the supplemental response. (R. Doc. 69 at 3).

On October 10, 2017, defense counsel initiated a telephone call with the undersigned's chambers during the deposition of Vickie Davis in her individual capacity. (R. Doc. 78). The undersigned informed the parties that to the extent the information sought by Smith fell within the scope of Shelter's response to Interrogatory No. 7, Shelter had waived the attorney-client privilege as discussed in the September 7, 2017 Order. (R. Doc. 78 at 2). The Court further stated that "[w]ithout a specific question before the Court or the particular basis for a refused response," the Court would not provide any further guidance on the issue. (R. Doc. 78 at 2).

On November 22, 2017, Smith filed the instant Motion, which seeks *in camera* review of all documents withheld on Shelter's privilege log. (R. Doc. 79).

**II.  Law and Analysis**

    **A.  Propriety of Blanket *In Camera* Review**

"Trial courts possess broad discretion to supervise discovery." *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 436 n.114 (5th Cir. 1990) (citation omitted). The decision whether to conduct an *in camera* review is within the district court's discretion. *See United Investors Life Ins. Co. v. Nationwide Life Ins. Co.*, 233 F.R.D. 483, 486 (N.D. Miss. 2006) (citation omitted) ("Federal courts maintain broad discretion in discovery matters, and the election to conduct an *in camera* review is well within the bounds of that discretion."); *see also Stephenson v. I.R.S.*, 629 F.2d 1140, 1145 (5th Cir. 1980) (citation omitted).

"When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Blanket assertions of a privilege are unacceptable, and the court and other parties must be able to test the merits of a privilege claim. *United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982) (citing *United States v. Davis,* 636 F.2d 1028, 1044 n. 20 (5th Cir. 1981)).

Smith does not identify any specific documents identified on Shelter's privilege log that fail to meet the requirements of Rule 26(b)(5)(A) or otherwise should be susceptible to *in camera* review in light of the arguments raised in Smith's motion. Instead, Smith requests the Court to conduct an *in camera* review of the "approximately 139 documents" identified on Shelter's privilege log to determine whether and to what extent documents have been improperly withheld on the basis of the attorney-client privilege and/or the work product doctrine. (R. Doc. 79 at 1).

Such a blanket review of every document identified on Shelter's privilege log "would constitute a great and unnecessary expenditure of judicial resources." *See United States v. Homeward Residential, Inc.*, No. 12-461, 2016 WL 1031154, at *4 (E.D. Tex. Mar. 15, 2016); *United Inv'rs Life Ins. Co. v. Nationwide Life Ins. Co.*, 233 F.R.D. 483, 486 (N.D. Miss. 2006). Accordingly, the Court will deny Smith's motion to the extent it seeks a blanket *in camera* review of the withheld documents.

In light of the briefing before the Court and the procedural posture of this action, however, the Court will provide the following determinations regarding the scope of discovery under Rule 26(b) of the Federal Rules of Civil Procedure.

**B.     Shelter's Response to Interrogatory No. 7**

Given the parties' contrasting interpretations of the scope of the Court's rulings on Interrogatory No. 7, the Court will provide the following clarification.

Smith's Interrogatory No. 7 is as follows:

> Did you know, at the time during the course of the litigation between Bradley W. Smith v. Paul A. Babin and Shelter Mutual Insurance Company previously pending in the 19th Judicial District Court for the Parish of East Baton Rouge, that the exclusionary language of the Shelter Mutual Insurance Company policy issued to Paul A. Babin relied upon for a denial of coverage required a showing that the injuries caused must have been expected or intended from the standpoint of the insured? If you answer in the affirmative, please state when you first became aware of this fact.

(R. Doc. 54-3 at 6).

In its original response to Interrogatory No. 7 on August 25, 2016, Shelter objected on the basis that it the information sought was irrelevant because "federal courts are bound to give the judgments of the state courts the same faith and credit that the courts of one State are bound to give to the judgments of the courts of her sister States." (R. Doc. 54-5 at 5). In its supplemental response provided on May 18, 2017, Shelter reasserted the foregoing objection, adding that the interrogatory "seeks a legal conclusion from the attorneys representing Shelter and as such is protected by attorney-client privilege." (R. Doc. 54-8 at 6).

On July 13, 2017, the Court overruled Shelter's "full faith and credit" objections, as well as Shelter's objections based on relevance and proportionality. (R. Doc. 63 at 9-12). With respect to Interrogatory No. 7, the Court required Shelter to provide a privilege log pursuant to Rule 26(b)(5)(A) to the extent it withheld a response based on privilege, and otherwise ordered

5

Shelter to respond. (R. Doc. 63 at 16-17). Furthermore, in light of Smith's representation that he was not seeking "any conclusion from counsel for Shelter," the ruling provided that Shelter could provide a complete response based on its "awareness of court decisions and results of litigation." (R. Doc. 63 at 17).

On July 24, 2017, Shelter provided the following second supplemental response to Interrogatory No. 7: "Shelter at all times was aware of the exclusionary language in the policy issued to Paul Babin and how Louisiana courts have interpreted that particular exclusionary language." (R. Doc. 65-7 at 4).

Smith again moved to compel an additional response. (R. Doc. 64). On September 7, 2017, in finding Shelter's second supplemental response to Interrogatory No. 7 to be adequate, the Court stated that while Shelter "abandoned" the attorney-client privilege objection previously raised in its first supplemental response to this interrogatory, its second supplemental response based on its awareness of the exclusionary language and relevant jurisprudence was sufficient. (R. Doc. 69 at 3-4).

On October 10, 2017, defense counsel initiated a telephone call with the undersigned's chambers during the deposition of Vickie Davis in her individual capacity in light of defense counsel's objections to certain questions related to Shelter's second supplemental response to Interrogatory No. 7. (R. Doc. 78). The Court's minute entry order from the telephone conference provided that "[b]ased on the representations of counsel during the conference, it appears that the defense [was] refusing to answer questions exploring the basis for this interrogatory response on the basis that such information was provided by counsel for the defendant prior to the underlying trial at issue. In essence, Shelter stands by its Interrogatory response yet argues privilege if called on to provide a basis for that response." (R. Doc. 78 at 1). The undersigned further

informed the parties that "to the extent the information sought by Plaintiff fell within the scope of Defendant's response to Interrogatory No. 7, Defendant had waived the attorney-client privilege as discussed in the Court's Order dated September 7, 2017" but that in the absence of "a specific question before the Court or the particular basis for a refused response, the Court [would] not provide further guidance on this issue." (R. Doc. 78 at 2).

Smith now argues that in light of the foregoing, as well as inconsistencies between Vicki Davis's deposition testimony and Shelter's second supplemental response to Interrogatory No. 7, the Court should order Shelter "to disclose all documents or communications regarding the intentional act exclusionary language." (R. Doc. 79-1 at 5-6). In opposition, Shelter argues that the Court's September 7, 2017 Order merely notes that Shelter "abandoned" the attorney-client privilege objection in providing a response to Interrogatory No. 7, and that the Court's October 10, 2017 Order should be ready narrowly to the extent it states that Shelter "waived" the attorney-client privilege with respect to its response to Interrogatory No. 7. (R. Doc. 83 at 4-6). In reply, Smith argues in the alternative that Ms. Davis, in her capacity as Shelter's Rule 30(b)(6) representative, waived the attorney-client privilege with regard to any communications between Shelter and its outside counsel on Shelter's interpretation of the intentional act exclusionary language. (R. Doc. 88 at 2-4).

To be clear, the Court's rulings on Interrogatory No. 7 do not provide that Shelter has waived the attorney-client privilege (or work product immunity) with regard to any and all communications between Shelter and its outside counsel regarding the intentional act exclusionary language. As noted in the July 13, 2017 Order, Smith represented that through Interrogatory No. 7, he was "not seeking any conclusion from counsel for Shelter, rather the knowledge of Shelter, as a professional insurer, should know when their policy language is

7

interpreted by the courts or when it is found to be ambiguous." (R. Doc. 54-2 at 7). It was solely in that context that the Court ordered Shelter to provide a second supplemental response, that Shelter provided such a response, and that the Court found the response appropriate.

The Court's later statement in its October 10, 2017 Order that Shelter has "waived the attorney-client privilege as discussed in the Court's Order dated September 7, 2017" must be limited to the foregoing context. By affirmatively withdrawing an assertion of privilege in response to the interrogatory, Shelter waived the attorney-client privilege to the extent any information sought by Smith through discovery, including depositions, falls within the scope of Shelter's "response" to Interrogatory No. 7. (R. Doc. 78 at 2). Again, the relevant second supplemental response is as follows: "Shelter at all times was aware of the exclusionary language in the policy issued to Paul Babin and how Louisiana courts have interpreted that particular exclusionary language." (R. Doc. 65-7 at 4). All that this supplemental response puts at issue is the timing of Shelter's knowledge of (1) the exclusionary language in the policy and (2) Louisiana jurisprudence on the particular exclusionary language. Accordingly, any objection based upon the attorney-client privilege regarding when Shelter obtained the foregoing knowledge has been waived.[1] None of the Court's orders provide that any objection based on attorney-client privilege regarding Shelter's counsel's conclusions or interpretations regarding the exclusionary language in the policy or relevant jurisprudence has been waived.

---

[1] At any rate, such factual information falls outside the scope of the attorney-client privilege and work product protection. *See Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) ("The [attorney-client] privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney."); *Williams v. United States Environmental Services, LLC*, No. 15-168, 2016 WL 617447, at *4 (M.D. La. Feb. 16, 2016) ("Work product protection extends to documents and tangible things that are prepared in anticipation of litigation by a party or its representative, but does not extend to the underlying relevant facts, or to documents assembled in the ordinary course of business.") (internal citations omitted).

In support of its Motion, Smith highlights deposition testimony from Ms. Davis (in both her individual and corporate representative capacities) that raise issues regarding the veracity of Shelter's second supplemental response to Interrogatory No. 7. On October 12, 2017, during Ms. Davis' deposition as the corporate representative of Shelter, Smith's counsel asked the following question: "Did anyone - - did your lawyers tell you that you were required to show that Paul Babin subjectively intended the harm, that it was a dual prong showing?" (R. Doc. 88-2 at 9). Defense counsel conferred off the record and then, on the record, stated that they "were waiving" the attorney-client privilege with respect to the foregoing question, restated by defense counsel to Ms. Davis as "Whether we advised you that there was a two-prong analysis for the intentional tort. . . ." (R. Doc. 88-2 at 10). Ms. Davis answered that Shelter was advised by outside counsel on the foregoing, but that she did not have any recollection of when Shelter received such information or whether the information was received in writing. (R. Doc. 88-2 at 10). Two days earlier during her deposition in her individual capacity, Ms. Davis testified that defense counsel advised her some time prior to October 2, 2014 that the policy required a dual showing of an intentional act and intentional harm; that she had already known that information at the time it was provided to her; that she had no recollection of when she obtained such information; and that she "probably knew" of the dual prong requirement in 2005, but could not say for sure. (R. Doc. 79-5 at 8-23).

Despite the foregoing, Smith does not identify a single document withheld on Shelter's privilege log that potentially withholds information inconsistent with Shelter's supplemental response to Interrogatory No. 7 or otherwise would fall within the scope of Shelter's waiver of the attorney-client privilege as described above. As stated above, the Court will not conduct an *in camera* review of all documents withheld on Shelter's privilege log. The Court will, however,

9

require Shelter to review its withheld documents to determine whether any withheld documents involved communications by counsel to Shelter regarding "how Louisiana courts have interpreted" the exclusionary language at issue in Interrogatory No. 7. Shelter must then identify any such documents, including the dates of the underlying communications, without revealing any information to which Shelter is asserting privilege.

The Court will now turn to the more general issue of whether Shelter has waived the attorney-client privilege and/or the work product doctrine by placing certain information at issue in this action.

### C. The Attorney-Client Privilege

Rule 501 of the Federal Rules of Evidence requires a federal court sitting in diversity to apply the appropriate state's law concerning the scope and application of the claimed attorney-client privilege. The Louisiana Code of Evidence states:

> A client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication . . . made for the purpose of facilitating the rendition of professional legal services to the client, as well as the perceptions, observations, and the like, of the mental, emotional, or physical condition of the client in connection with such a communication. . . .

La. Code Evid. art. 506(B). Under Louisiana law, both the client and his or her lawyer or the lawyer's representative may claim the privilege. La. Code Evid. art. 506(D).

Smith argues that Shelter has waived the attorney-client on the basis of the "anticipatory waiver" theory as detailed by the Louisiana Supreme Court in *Succession of Smith v. Kavanaugh, Pierson & Taley*, 513 So.2d 1138 (La. 1987). Under Louisiana law, a party waives the attorney-client privilege when he "pleads a claim or defense in such a way that he will be forced inevitably to draw upon a privileged communication at trial in order to prevail. Consequently, he places at issue and waives his privilege as to communications on the same subject under his

control." *Id.* at 1145. In finding such waiver, the Court "must concern itself solely with whether the privilege holder has committed himself to a course of action that will require the disclosure of a privileged communication." *Id.* at 1146.

Smith argues that because this is an action for excess judgment liability under La. R.S. 22:1973, Shelter has waived the attorney-client privilege to the extent that its outside counsel performed its obligations under that statute, including obligations pertaining to the various factors in determining whether an insured fails to settle a claim in bad faith as pronounced in *Smith v. Audubon Ins. Co.*, 679 So.2d 372 (La. 1996).[2] (R. Doc. 79-1 at 7-10). Smith claims that "Shelter's reliance on outside counsel to perform duties which are imposed on the insurer under La. R.S. 22:1973 and the *Smith v. Audubon Ins. Co.* factors will now require Shelter to draw upon these communications or documents at trial." (R. Doc. 79-1 at 8). Smith argues that a finding of waiver is supported by Ms. Davis's testimony that Shelter did not adjust Smith's claim and outside counsel was responsible for determining whether there was coverage under the

---

[2] In relevant part, the *Smith v. Audubon* decision provides the following:

> [T]he determination of whether the insurer acted in bad faith turns on the facts and circumstances of each case. Of course, an insurer is not obliged to compromise litigation just because the claimant offers to settle a claim for serious injuries within the policy limits, and its failure to do so is not by itself proof of bad faith. The determination of good or bad faith in an insurer's deciding to proceed to trial involves the weighing of such factors, among others, as the probability of the insured's liability, the extent of the damages incurred by the claimant, the amount of the policy limits, the adequacy of the insurer's investigation, and the openness of communications between the insurer and the insured. Nevertheless, when an insurer has made a thorough investigation and the evidence developed in the investigation is such that reasonable minds could differ over the liability of the insured, the insurer has the right to choose to litigate the claim, unless other factors, such as a vast difference between the policy limits and the insured's total exposure, dictate a decision to settle the claim.

*Smith*, 679 So. 2d at 377. This Court has concluded that discovery bearing upon the foregoing factors are relevant to Smith's claims. (R. Doc. 63 at 11-12).

11

policy, valuing the claim, and investigating the claim. (R. Doc. 79-1 at 8; *see generally* R. Doc. 79-7).

In opposition, Shelter argues that it has properly asserted the attorney-client privilege, and "does not at this time intend to introduce writings and/or documents of conversations that its litigation attorneys had with Shelter and that Shelter had back to its attorneys." (R. Doc. 83 at 1). Shelter further argues that it may introduce at trial "things and materials that exist in the underlying case such as pleadings, depositions, and other evidence" because such materials are not privileged. (R. Doc. 83 at 2). Finally, Shelter argues that Smith's "anticipatory waiver sweeps too broadly" and urges the Court to following the result of *Dixie Mill Supply Co. Inc. v. Cont'l Cas. Co.*, 168 F.R.D. 554, 556 (E.D. La 1996). (R. Doc. 83 at 3).

In reply, Smith argues, among other things, that *Dixie Mill* is distinguishable because the Court has already compelled Shelter to respond to discovery responses, and the issue before the Court is "not one of whether the claims file is discoverable." (R. Doc. 88 at 4).

As discussed above, Smith has made no effort to identify any specific documents withheld on the privilege log that might be subject to such waiver. Accordingly, the Court will not conduct a blanket *in camera* review of the documents withheld by Shelter to determine whether, and to what extent, documents have been withheld on the basis of anticipatory waiver. Furthermore, despite Smith's arguments to the contrary, the Court finds the detailed reasoning in *Dixie Mill* to be persuasive. The Court agrees with *Dixie Mill* that "[t]he reasonableness of the insurers' actions in a bad faith case can be proved by objective facts, which are not shielded from discovery and do not necessarily require the introduction of privileged communications at trial." *See Dixie Mill*, 168 F.R.D. at 559. It is therefore proper to require plaintiffs in insurance bad faith action who "truly need a better explanation for why their claims were denied or no tender

12

was made" to first depose the relevant claims adjuster or insurance company representative to obtain such factual information. *See Miller v. Favre*, No. 11-615, 2012 WL 6212793, at *2 (M.D. La. Oct. 22, 2012), *aff'd*, 2012 WL 6475612 (M.D. La. Dec. 13, 2012).

In this action, however, Smith has attempted to obtain information relevant to the *Smith v. Audubon* factors through the deposition of Vickie Davis in her individual capacity and in her capacity as corporate representative of Shelter. Having reviewed the deposition transcript excepts provided by Smith (R. Doc. 79-7), the Court concludes that to the extent Shelter has instead relied on outside counsel in the determination of Babin's liability and his "total exposure" in the underlying action, it has committed itself to a course of action that will require the disclosure of privileged communications. *Smith*, 513 So.2d at 1146. These two issues—Shelter's determination of Babin's liability and his "total exposure" in the underlying action—are relevant to determining whether and to what extent Shelter is liable for failure to settle under La. R.S. 22:1973. *See Smith*, 679 So. 2d at 377.

The Court will require Shelter to review the documents withheld on its privilege log and produce any documents withheld on the basis of the attorney-client privilege to the extent they provide information regarding Shelter's determination of Babin's liability and his "total exposure" in the underlying action.

### D. Work Product Protection

Rule 26(b)(3) of the Federal Rules of Civil Procedure restricts a party's ability to obtain work product from an opponent during discovery. Work product consists of "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). The work product protection is broader in scope and reach

than the attorney client privilege. The attorney-client privilege "extends only to client communications, while the work product protection encompasses much that has its source outside client communications." *Stoffels v. SBC Communications, Inc.*, 263 F.R.D. 406, 412 (S.D. Tex. 2009).

Work product protections "are held by both the attorney as well as the client" and may be asserted and waived by either. *In re Grand Jury Subpoenas*, 561 F.3d 408, 411 (5th Cir. 2009). Rule 26(b)(3) distinguishes between "ordinary" and "opinion" work product. The party seeking disclosure of opinion work product is subject to a higher burden because opinion work product reveals the "mental impressions, conclusions, opinions, or legal theories of an attorney." *Conoco Inc. v. Boh Brothers Constr. Co.*, 191 F.R.D. 107, 118 (quotations omitted). This protection is not absolute, however. Like the attorney client privilege, opinion work product may be disclosed when the holder waives the protection by placing the protected material "at issue" in the litigation. *Id.* at 118. The party seeking discovery of opinion work product must show a compelling need for the information and an inability to obtain it otherwise. Fed. R. Civ. P. 26(b)(3).

For the same reasons provided above, the Court concludes that Shelter has placed at issue its determination of Babin's liability and his "total exposure" in the underlying action. Furthermore, the Court finds that Smith has shown a compelling need for this information and there are no alternative means of obtaining this information. Indeed, Shelter has not raised any argument that the foregoing information can be obtained elsewhere notwithstanding Shelter's reliance on outside counsel regarding these issues. Accordingly, the Court finds that Shelter's immunity under the work product doctrine, whether ordinary or opinion, has been waived on the

topics regarding Shelter's determination of Babin's liability and his "total exposure" in the underlying action. *See Conoco*, 191 F.R.D. at 119.

### III. Conclusion

Based on the foregoing,

**IT IS ORDERED** that Plaintiff's Motion for *In Camera* Review of Documents with Request for Expedited Consideration (R. Doc. 79) is **GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER ORDERED** that within **7 days** of the date of this Order, Shelter shall identify to Smith any documents withheld on the privilege log involving communications by counsel to Shelter regarding "how Louisiana courts have interpreted" the exclusionary language at issue in Interrogatory No. 7, including the dates of the communications, without revealing any information to which Shelter is asserting privilege, so that Smith may determine whether to challenge any assertion of privilege on that basis.

**IT IS FURTHER ORDERED** that within **7 days** of the date of this Order, Shelter shall produce to Smith any documents withheld on its privilege log to the extent they provide information regarding Shelter's determination of Babin's liability and his "total exposure" in the underlying action.

Signed in Baton Rouge, Louisiana, on March 12, 2018.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**